UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,        Case No. 10-20563
                Honorable Thomas L. Ludington

v.

RICHARD ALAN BEHNAN and
KELLY MOREL,

    Defendants.
_____/

**ORDER SETTING SENTENCING DATE
AND DIRECTING SUPPLEMENTAL BRIEFING**

  For many years, Defendants Kelly Morel and Richard Behnan traveled across Michigan providing podiatric services to thousands of patients. Richard Behnan is a licensed podiatrist, and Kelly Morel was his office manager, although Dr. Behnan had no office. Over time, Defendants developed a method to enhance their income: they clipped peoples' toe-nails and then submitted claims to Medicare and Blue Cross Blue Shield of Michigan (BCBSM) for reimbursement as if they had performed surgical procedures. They were then reimbursed by Medicare or BCBSM for procedures that were not performed. This practice was eventually discovered.

  On September 22, 2010, Defendants were charged by indictment with 42 counts of Health Care Fraud. On May 11, 2011, a superseding indictment was filed, charging both Defendants with 13 counts of Health Care Fraud: Conspiracy to Commit Health Care Fraud from September 2000 through December 2010 in violation of 18 U.S.C. §§ 1347 and 1349 (Count 1); and Health Care Fraud from September 2000 through December 2010 in violation of 18 U.S.C.

§§ 1347 and 2 (Counts 13, 25, 28, 38, and 41–48). At that time, the Court granted the government's motion to dismiss the remaining counts of the original indictment.

Before the superseding indictment was filed, during the parties' final pretrial conference on April 26, 2011, the government suggested severing the Defendants' trials. Defendants offered no objection, and further consented to Morel's trial proceeding first. Morel acknowledged receipt of a plea offer from the government, but she and her attorney explained that she wished to reject the proposed offer and proceed to trial. A trial date was scheduled for May 23, 2011.

Morel's rejection of the plea offer was curious given the following — she had previously furnished the United States Department of Health and Human Services with a sworn statement on June 5, 2008. In the statement, Morel admitted nearly all of the government's allegations. She indicated that she was Behnan's office manager, but often treated patients and billed them as if he had provided the care. She also acknowledged that "about 95% of avulsion codes are not being done correctly." Morel explained that she or Behnan "trimmed patients toenails and would bill for an avulsion" procedure although the bill should have indicated "routine foot-care" instead. She also acknowledged that she and Behnan had negotiated an arrangement where she was paid a salary for her bookkeeping work and, in addition, 20% of patient revenue.

Morel's trial began on May 23, 2011. At the conclusion of the government's case, on May 26, Morel entered a guilty plea to all counts of the superseding indictment without a written plea agreement. During her plea acceptance hearing, Morel acknowledged having discussions about the miscoding practice with Behnan. According to Morel, Behnan assured her that he, as the licensed physician, was the only party at risk.

Behnan's final pretrial conference was set for November 21, 2011, with the trial to begin eight days later. On November 21, Behnan inked a Rule 11 agreement with the government, leaving the Court to resolve three Guideline variables (§2B1.1(b)(1), §3B1.1, and §3B1.3).

Presentence reports were prepared for both Defendants. Morel's was circulated on June 29, 2011 and then revised on August 24 and November 23 of that year. Her report recommended the loss she and Behnan caused be determined as $1,624,089.66, with an offense-level increase of 16 for a loss exceeding $1,000,000. The report recommended restitution be determined in a like amount. Morel has not contested either provision, and her advisory Guidelines range is for a custodial sentence of 33 to 41 months. Behnan's presentence report was circulated on January 5, 2012 and revised on January 26. Behnan, on the other hand, has contested the amount of the loss and the recommended restitution amount (both identical to Morel's), and currently faces a Guidelines range of 51 to 63 months based on the probation officer's determination that the amount of loss exceeds $1 million.

Behnan's sentencing hearing began on October 22, 2012 and was continued on November 26, 2012. Before the second date, his attorney filed a supplemental brief, ECF No. 60, suggesting that the amount of loss Morel and Behnan caused over twelve years is $30,240, not more than $1.6 million. The underlying premise for Behnan's calculation is that no more than three procedures per month were miscoded. The supplemental brief, however, was not accompanied by an affidavit.

This is important because it is the amount of loss that effectively drives the applicable advisory Guidelines range. U.S.S.G. § 2B1.1 provides for an increase of the offense level based on the amount of the loss involved. For example, pursuant to § 2B1.1, an offense causing a loss between $30,000 and $70,000 requires an offense-level increase of 6, equaling 15 to 21 months'

incarceration. An offense causing a loss of over $1 million, however, imposes a 16 level increase, an additional 51 to 63 months in custody. Further, the government suggests that § 2B1.1(b)(8) applies to Behnan, elevating his advisory Guidelines range to 63 to 78 months. When determining the loss, "[t]he court need only make a reasonable estimate of the loss." Application Note 3(C). *See also United States v. Lutz*, 154 F.3d 581, 590 (6th Cir. 1998) ("In determining the loss for sentencing purposes, a district court need only make a reasonable estimate of the loss.") (citation omitted).

Additionally, 18 U.S.C. §§ 3663–64 governs orders of restitution to be paid by those convicted under Title 18. § 3663A(c)(1)(B) mandates restitution in a case where "an identifiable victim or victims has suffered a physical injury or pecuniary loss." Consequently, the mandatory restitution provisions apply here, unless the Court concludes that the complexity of facts in assessing the victim's losses would unduly complicate or prolong the sentencing process beyond the need to provide restitution to the government. *See* § 3663A(c)(3).

The burden of proof for all factual matters at sentencing is a preponderance of the evidence. *United States v. Rodriguez*, 896 F.2d 1031, 1032 (6th Cir. 1990). The government bears the burden of establishing the initial offense level, and then the burden is on the party seeking any adjustment. *Id.* at 1032–33. For example, if the government seeks to increase the defendant's offense level, it bears the burden of establishing the facts to support the increase. Likewise, "[i]n circumstances where a defendant advances a mitigating factor which if accepted by the court would potentially reduce the sentence," the defendant bears the burden of establishing those facts. *Id.* at 1033. In this case, the government bears the initial burden of establishing the amount of loss, and then the burden shifts to Defendants to present evidence in mitigation of that figure.

At this point in the proceedings, the government has completed its proofs, identifying how and why the amount of loss should be set over $1.6 million. The government first and foremost relies on Morel's sworn statement that 95% of the 37,456 nail avulsion procedures she and Behnan sought reimbursement for were, in her words, "not being done correctly." Second, the government argues that the procedures Behnan has admitted to performing fraudulently in his Rule 11 agreement were randomly performed. It is highly improbable, they suggest, that Defendant performed only three fraudulent procedures a month, but just so happened to perform fraudulent procedures each and every time he interacted with an undercover investigator. Third, the government randomly selected 50 of Behnan's patients that had been billed for nail-avulsion procedures and interviewed 20 that could be located. All of them told the interviewing investigative agent that Behnan just clipped their toe-nails, nothing more.

Behnan has responded with two witnesses, and a consensus was reached on the language defining what procedures may be billed as nail-avulsion procedures under CPT codes 11730 and 11732. The National Government Services Code Provisions for Surgical Treatment of Nails[1] defines nail-avulsions as follows:

> [T]he separation and removal of a border of, or the entire nail, from the nail bed to the eponychium. In order for this procedure to be considered a nail avulsion, it must be performed using an injectable anesthesia except in the instances in which a patient is devoid of sensation or there are extenuating circumstances in which injectable anesthesia is not required or is medically contraindicated.

Similarly, a consensus has been reached about the type of procedures that may not be billed to CPT codes 11730 and 11732: "Trimming, cutting, clipping, or debriding of a nail, distal to the eponychium, will be regarded as routine foot care. . . . It is not appropriate to report CPT codes 11730/11732 when performing these services."

---

[1] This document was utilized during the sentencing hearing on November 26, 2012, but not marked as an exhibit. The quoted language can be found at http://codingsuite.mediregs.com under "Surgical Treatment of Nails #L26424 (R3) V29 (Rev. Eff. 03/01/2010).

Behnan's attorney cross-examined the investigative officers that interviewed the 20 patients who had received Behnan's services. It was established that the patients' opinions about whether they received a nail-avulsion procedure from Behnan was at least in part based upon the officers' representations defining what procedures would and would not apply. Testimony was furnished by a licensed podiatrist that a CPT Code 11730/11732 qualifying procedure could be performed for a patient with the patient believing that they had only had their toe-nails clipped. Another witness testified that the high percentage of nail avulsions performed by Behnan in relation to other podiatry services is not significant in demonstrating fraud given the unique geriatric focus of his practice.

Behnan anticipates calling up to four additional witnesses, requiring two to four hours to complete the sentencing hearing. Supplemental briefing would be helpful to the Court summarizing the current progress of the proceedings and what is to be expected during the next date. Behnan will be directed to present briefing summarizing the witness testimony he offered during the November 26 portion of the hearing, as well as the testimony he anticipates eliciting during the third and final installment. Behnan should bear in mind that, as reviewed on the record, the government has come forward with sufficient evidence concerning its loss and restitution calculation to transfer the burden to Behnan. If he wishes to mitigate that figure, he must now establish a different metric for the loss he believes appropriate.

Accordingly, it is **ORDERED** that both Defendant Morel and Defendant Behnan are **DIRECTED** to appear with counsel for sentencing on **January 14, 2013** at **9:00 a.m.** at the courtroom of Honorable Thomas L. Ludington, United States Courthouse, 1000 Washington Ave, Bay City, Michigan.

- 7 -

It is further **ORDERED** that Defendant Behnan is **DIRECTED** to file supplemental briefing, as outlined above, no later than **December 21, 2012**.

It is further **ORDERED** that the government is **DIRECTED** to respond to Defendant Behnan's briefing no later than **December 31, 2012**.

Dated: November 28, 2012                                     s/Thomas L. Ludington
                                                             THOMAS L. LUDINGTON
                                                             United States District Judge

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on November 28, 2012.

                    s/Tracy A. Jacobs
                    TRACY A. JACOBS

---